# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

CORRECTED MEMORANDUM

May 10, 2012

William J. Nicoll, Esq.
Jenkins, Block & Associates, P.C.
The Symphony Center, Suite 206
1040 Park Avenue
Baltimore, MD 21201

Alex S. Gordon, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

       Re:  Reginald Anthony Wright v. Michael J. Astrue,
            Commissioner, Social Security, Civil No. SKG-10-3547

Dear Counsel:

       Claimant, Reginald Anthony Wright, by his attorney, Paul R. Schlitz, Jr. and Jenkins, Block & Associates, P.C., filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").

1

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  (ECF No. 8).  Currently pending before the Court are cross motions for summary judgment.  (ECF No. 12; ECF No. 16).  No hearing is necessary.  Local Rule 105.6.  For the reasons that follow, the Court hereby DENIES both claimant's Motion for Summary Judgment (ECF No. 12) and defendant's Motion for Summary Judgment (ECF No. 16), and GRANTS claimant's Motion for Remand (ECF No. 12).

## I.   PROCEDURAL HISTORY

Mr. Wright filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on December 3, 2008, alleging that he became unable to work starting on March 1, 2008 due to aseptic necrosis of both shoulders. (R. 65, 66).  Mr. Wright's applications were denied at the initial and reconsideration levels. (R. 65-68).  Thereafter, Mr. Wright had an administrative hearing, on March 11, 2010. (R. 85-110).  On April 22, 2010, the Administrative Law Judge ("ALJ") denied Mr. Wright's claim.  (R. 11-19).  On May 5, 2010, Mr. Wright requested the Appeals Council to review the ALJ's decision. (R. 4-5).  The Appeals Council denied Mr. Wright's request for review, making the ALJ's opinion the final decision of the agency.  (R. 1-3).  On April 29, 2011 Mr. Wright

2

filed this action, seeking review of that final decision

pursuant to 42 U.S.C. § 405(g).

## II.   FACTUAL BACKGROUND

The Court has reviewed the Commissioner's Statement of Facts

and, finding that it accurately represents the record, hereby

adopts it.  (ECF No. 16-1, 3-13).

## III. ALJ FINDINGS

In reviewing a claimant's eligibility for DIB and SSI, an

ALJ must consider all of the evidence in the record and follow

the sequential five-step analysis set forth in the regulations

to determine whether the claimant is disabled as defined by the

Act.  20 C.F.R § 416.920(a)(2011).[1]  If the agency can make a

disability determination at any point in the sequential

analysis, it does not review the claim further.  20 C.F.R. §

404.1520(a)(4)(2011).  After proceeding through each of the

required steps, the ALJ in this case concluded that Mr. Wright

was not disabled as defined by the Act.  (R. 19).

At the first step of the sequential analysis, the claimant

must prove that he is not engaged in "substantial gainful

---

[1] Disability is defined in the Act as the "inability to engage in
any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C. §
416(i)(1)(A)(2011).

activity."[2]  20 C.F.R. § 416.920(a)(4)(i)(2011).  If the ALJ

finds that the claimant is engaged in "substantial gainful

activity," he will not be considered disabled.  Id.  Applying 20

C.F.R. 404.1571 et seq., and 416.971 et seq., the ALJ determined

that Mr. Wright "has not engaged in substantial gainful activity

since March 1, 2008, the alleged onset date."  (R. 13).

     At the second step of the sequential analysis, the ALJ must

determine whether the claimant has a severe, medically

determinable impairment or a combination of impairments that

limit his ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521,

416.921(2011).  In addition, there is a durational requirement

that the claimant's impairment last or be expected to last for

at least 12 months.  20 C.F.R. § 416.909 (2011).

     Here, the ALJ found that Mr. Wright has a severe

impairment, consisting of avascular necrosis of the left and

right shoulders.  (R. 13).  The ALJ determined that his obesity

---

[2] Substantial gainful activity is defined as "work activity that
is both substantial and gainful."  20 C.F.R. § 416.972 (2011).
Work activity is substantial if it involves doing significant
physical or mental activities and even if it is part time or if
plaintiff is doing less, being paid less, or has fewer
responsibilities than when she worked before.  20 C.F.R. §
416.972(b) (2011).  Substantial gainful activity does not
include activities such as household tasks, taking care of
oneself, social programs, or therapy.  20 C.F.R. § 416.972(c)
(2011).

is not an impairment of the requisite duration. (R. 13).  The
ALJ also determined that Mr. Wright's hypertension is not severe
because it does not appreciably affect his ability to function.
(R. 14).  Regarding Mr. Wright's claimed anxiety, the ALJ
determined that the evidence is inadequate to establish a severe
mental disorder that has lasted or could be expected to last for
at least 12 continuous months, because anxiety is not included
as a condition in Social Security paperwork and only one
relevant medical observation related to anxiety exists in the
record.  (R. 13-14).  Regarding Mr. Wright's back, neck and hip
pain, the ALJ concluded that claims of back and neck pain lack
substantiating medical evidence and that there is no indication
that Mr. Wright's hip pain will last in any severe degree for at
least 12 months.  (R. 14).

     At step three, the ALJ considers whether the claimant's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing" or "LOI").  20
C.F.R. § 416.920(a)(4)(iii) (2011).  Here, the ALJ determined
that Mr. Wright does not meet Listings 1.02(B) (Major
dysfunction of joints in upper extremities) or Listing 1.08
(Soft tissue injury under continuing surgical management).  (R.
15).  Specifically, the ALJ found that Mr. Wright did not meet

Listing 1.02(B) because there is no medical confirmation that he cannot perform fine and gross movements effectively. (R. 15). The ALJ found that Mr. Wright did not meet Listing 1.08 because there was no objective medical verification that major function of Mr. Wright's upper extremities would not be restored via the surgical procedures within 12 months.

Before an ALJ advances to the fourth step of the sequential analysis, he must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(e)(2011). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184(Jul. 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2)(2011). In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the

6

claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c).

Here, the ALJ determined that Mr. Wright has the following residual functional capacity. (R. 16-17). Mr. Wright can perform light work as defined in 20 C.F.R. 416.1567(b), except that he is limited to lifting and carrying up to ten pounds and must have the sit/stand option. (R. 16). Additionally, he can do no overhead reaching. (Id.). Applying the two-step test for evaluating subjective symptoms, the ALJ found that "[Mr. Wright's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "[Mr. Wright's] statements concerning the intensity, persistence and limiting effects of [those] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (R. 16).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work.[3]  20 C.F.R. §§ 404.1520(e),

---

[3] The regulations state that "impairment(s) and any related symptoms, such as pain, may cause physical and mental limitations that affect what [one] can do in a work setting . .

7

416.920(e)(2011).   The ALJ noted that Mr. Wright "has past relevant semiskilled very heavy work as a furniture driver and semiskilled medium work (heavy as done) as a refuse truck driver." (R. 17).   Thus, the ALJ found that Mr. Wright would be unable to return to past relevant work.   (Id.).

If the claimant is unable to resume his past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis.   This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy.   20 C.F.R. §§ 404.1520(g), 416.920(g)(2011).   At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy.   McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).   The agency must prove both the claimant's capacity to perform the job and that the job is available.   Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).   Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those

---

. residual functional capacity is the most [one] can still do despite [those] limitations." 20 C.F.R. § 404.1545(2011).

alternative positions or that no such transferable skills are
necessary.  McLain, 715 F.2d at 869.

Here, The ALJ noted that Mr. Wright was 47 years old, a
"younger individual" according to the regulations, had at least
a high school education, and was able to communicate in English.
(R. 17).  The ALJ determined that "transferability of job skills
is not material to the determination of disability because using
the Medical-Vocational Rules as a framework supports a finding
that the claimant is 'not disabled' whether or not the claimant
has transferable job skills."  (R. 17).  Based upon the
testimony of the vocational expert and using the Medical-
Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2
(2011), the ALJ determined that, "considering [Mr. Wright's]
age, education, work experience, and residual functional
capacity, there are jobs that exist in significant numbers in
the national economy that [Mr. Wright] can perform."  (Id.).
Thus, the ALJ concluded that Mr. Wright had not been under a
disability, as defined in the Act, from the alleged onset date
of March 1, 2008 through the date of his decision, and recorded
a finding of "not disabled."  (R. 18) (citing 20 C.F.R. §§
404.1520(g), 416.920(g)(2011)).

## IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the

findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try Mr. Wright's claim de novo.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.

1962).   However, despite deference to the Commissioner's
findings of fact, "a factual finding by the ALJ is not binding
if it was reached by means of an improper standard or
misapplication of the law."  Coffman, 829 F.2d at 517.  The
Court has authority under 42 U.S.C. § 405(g) to affirm, modify,
or reverse the decision of the agency "with or without remanding
the case for a rehearing."  Melkoyan v. Sullivan, 501 U.S. 89,
98 (1991).

## V.   DISCUSSION

Mr. Wright raises two arguments on appeal: (1) the ALJ failed
to adequately evaluate Mr. Wright's condition under Listing
1.02(B); and (2) the ALJ failed to find that Mr. Wright was
disabled for a closed period from March 2008 to June 2009,
contrary to opinions of Mr. Wright's treating physician. (ECF
No. 12-1, 6-8).  The Court agrees with the first argument. As
for the second argument, although the Court makes no
determination as to whether Mr. Wright was disabled for the
closed period alleged, the Court considers the ALJ's analysis of
Dr. Ghosh's opinions inadequate.  Additionally, for reasons not
raised by plaintiff, the Court does not consider the ALJ's
analysis supported by substantial evidence.  Thus, the case must
be remanded.

## A. The ALJ failed to adequately evaluate Mr. Wright's conditions under Listing 1.02(B)

Mr. Wright argues that the ALJ's analysis in determining whether he met Listing 1.02(B) was insufficient.  (ECF No. 12-1, 6).  The Court agrees.

Listing 1.02, Major Dysfunction of a Joint(s) is described as:

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) <u>and</u> chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), <u>and</u> <u>findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)</u>.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.  Listing 1.02(B) adds that there must be the:

> [i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in <u>inability to perform fine and gross movements effectively</u>, as defined in 1.00(B)(2)(C).

<u>Id.</u> § 1.02(B)(emphasis added). The definition of "inability to perform fine and gross movements effectively" is:

> an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able

12

to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1.00(B)(2)(C). To meet this Listing, a claimant must satisfy all of the elements listed (i.e., the test is conjunctive). Cf. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (a claimant must prove that she meets all of the requirements of a Listing). Thus, the claimant must show all of the following elements: (1) gross anatomical deformity; (2) chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion; (3) adequate imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); and (4) involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively.

Here, the ALJ rejected disability under Listing 1.02(B) because "there is no medical confirmation that [Mr. Wright] cannot perform fine and gross movements effectively, particularly fine actions." (R. 15). That cursory explanation

13

was both inaccurate and inadequate.

The ALJ was correct to the extent that the two RFC assessments do not make findings of limitations on gross manipulation (i.e., handling) or fine manipulation (i.e., fingering).  Dr. Totoonchie's RFC assessment made no conclusion as to gross or fine manipulation. (R. 237).  Dr. Totoonchie checked neither the "limited" nor the "unlimited" boxes for those abilities, and Dr. Najar's RFC assessment found that Mr. Wright's gross and fine manipulation abilities were unlimited (R. 303).  However, the record included a report by Mr. Wright's treating physician, Dr. Ghosh, noting that Mr. Wright's shoulder pain was "aggravated when he pronates or supinates his left forearm with flexion." (R. 293).  An effect on fine and gross manipulation can certainly be inferred from this physical finding.  Further, and more importantly, the regulatory definition of "inability to perform fine and gross movements effectively" includes limitations in "reaching," "pushing" and "pulling," (20 C.F.R. Pt. 404, Subpt. P, App. 1.00(B)(2)(C)) and both RFC assessments found Mr. Wright limited in his ability to push and pull (R. 235; R. 301) and in his ability to reach in all directions. (R. 237; R. 303).  In fact, Dr. Totoonchie noted broadly that Mr. Wright experiences "pain with all arm movements." (R. 237).  Those limitations are supported by the

medical records, and the ALJ should have at least acknowledged
them in the context of his decision.

Moreover, the medical record corroborates and validates Mr.
Wright's own statements regarding personal care limitations.
Because personal care limitations are examples from the
definition of inability to perform fine or gross actions, the
ALJ should have at least acknowledged them in his analysis of
Listing 1.02(B). See 20 C.F.R. Pt. 404, Subpt. P, App.
1.00(B)(2)(C) ("[E]xamples of inability to perform fine and
gross movements effectively include, but are not limited to, the
inability to prepare a simple meal and feed oneself, [and] the
inability to take care of personal hygiene . . . ."). Dr.
Totoonchie noted in his RFC assessment that Mr. Wright's
activities of daily living were impaired, and that he had
difficulty with personal care and could not cook or do
housework. (R. 235; R. 239). He deemed Mr. Wright's statements
about activities of daily living ("ADLs") credible. (R. 239).
Similarly, Dr. Najar's RFC assessment noted that Mr. Wright "has
difficulty with personal care," and noted that Mr. Wright's
"ADLs are mostly consistent with the evidence." (R. 305).

The ALJ's analysis of Listing 1.02(B) was also
incomplete. He rejected disability under Listing 1.02(B)
on the grounds that there was "no confirmation that [Mr.

15

Wright] cannot perform fine and gross movements[,]" without even mentioning any of the other elements of the Listing. (R. 15).   The Fourth Circuit requires the ALJ to not only identify the relevant Listing but also to compare the claimant's symptoms to the Listing's criteria.  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) ("[The ALJ] . . . should have compared each of the listed criteria to the evidence of Cook's symptoms.  Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.").  A mere summary comparison is inadequate.  Id.  ("[The ALJ] also failed to compare Cook's symptoms to the requirements of any of the four listed impairments, except in a very summary way.").  Rather, the ALJ's duty of explanation is only satisfied when he or she provides findings and determinations sufficiently articulated to permit meaningful judicial review. See DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).  The ALJ has not done so here.  He may have not reached the other criteria, finding one of the criteria not met.  However, on remand, the ALJ should address all of the elements of the relevant Listings in a manner sufficient to permit judicial review.

**B. The ALJ's analysis of Dr. Ghosh's opinions was insufficient**

Mr. Wright argues that the fact that Dr. Ghosh kept him out of work and, on numerous occasions, deemed him disabled and unable to work between March 2008 to June 2009 proves that he was disabled for that closed period of time.[4]  (ECF No. 12-1, 8). Defendant counters that whether Mr. Wright is disabled or not under the applicable regulations is an issue reserved to the SSA.  (ECF No. 16-1, 22).  The ALJ made the same conclusion, stating:

> Between March 13, 2008 and March 23, 2009, Dr. Ghosh declared numerous times that the claimant was unable to work.  However, a physician's opinion concerning disability is on [sic] an issue reserved to the Commissioner and is not binding upon me.

(R. 17).  Defendant is correct that a physician's opinion that a patient is "unable to work" is not a medical opinion and is

---

[4] See R. 276 (concluding on March 13, 2008 that Mr. Wright "cannot do any type of work at the present time and is disabled"); R. 279 (noting on May 1, 2008 that Mr. Wright "has been unable to do any type of work since he has to be able to do manual labor"); R. 382 (stating on May 8, 2008  that Mr. Wright is "totally disabled"); R. 379 (prescribing "[n]o work" on July 28, 2008); R. 380 (ordering, on August 14, 2008,  no work until next visit); R. 284 (concluding on August 28, 2008 that "[t]he patient is totally disabled"); R. 361 (planning, on September 29, 2008, to make a decision regarding [Mr. Wright's] return to work"); R. 288 (concluding on October 23, 2008 that Mr. Wright "cannot work"); R. 291 (stating on December 4, 2008 that Mr. Wright was "totally disabled at the present time"); R. 362 (noting on March 3, 2009 that Mr. Wright is "disabled and cannot work").

instead a legal issue reserved to the Commissioner.  In relevant part, 20 CFR 404.1527, 416.927 provides:

> (d) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

Thus, physicians' ultimate conclusions as to disability cannot be given controlling weight.  SSR 96-5p, 1996 SSR LEXIS 2, *14. Moreover, the regulatory test for determining what weight to accord the opinion, found at 20 C.F.R. § 404.1527(C), does not strictly apply because that test applies only to "medical opinions."  "Medical opinions" are defined in 20 C.F.R. § 404.1527(a)(2) as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about

18

the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

Nonetheless, the opinions of Dr. Ghosh that plaintiff was entirely disabled carry at least some probative value, and merited more analysis than they received. Indeed, the Commissioner's policy interpretation ruling regarding "medical source opinions on issues reserved to the Commissioner" emphasizes "[t]hat opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the . . . decision must *explain the consideration given to the treating source's opinion(s)*." SSR 96-5p, 1996 SSR LEXIS 2, * 1-2 (emphasis added); see also id. at *14-15 (providing that medical source opinions reserved to the Commissioner "*must not be disregarded*" despite the fact that, "even when offered by a treating source, they can never be entitled to controlling weight or given special significance.") (emphasis added); id. at *5-6 ("[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").  More specifically, the ALJ "must apply the *applicable* factors in 20 CFR 404.1527(d)[,]" for example, "it would be appropriate to consider the supportability of the opinion and its consistency

19

with the record as a whole." Id. at *7 (emphasis added).  The
ALJ here failed to analyze whether Dr. Ghosh's ultimate opinions
as to plaintiff's disability during the closed period were
supported by other medical evidence and consistent with the
record as a whole.  Indeed, the ALJ's only explanation for
disregarding Dr. Ghosh's ultimate opinion is that he is not
bound to accept it.  (R. 17). That was an insufficient analysis.

     Further, the ALJ failed to analyze the actual medical
opinions upon which Dr. Ghosh's ultimate conclusions as to
disability were based.  Again, "medical opinions" include
"statements . . . that reflect judgments about the nature and
severity of your impairment(s), including your symptoms,
diagnosis and prognosis, what you can still do despite
impairment(s), and your physical or mental restrictions."  20
C.F.R. § 404.1527(a)(2).  Dr. Ghosh's notes reflect many such
judgments.  (E.g., R. 275 ("I feel that [plaintiff] has
significant rotator cuff impingement syndrome of both
shoulders"); R. 276 ("MRIs done of both of his shoulders . . .
show avascular necrosis of both humeral heads, the right being
worse than the left.  This can explain the significant pain he
is having at the present time"); R. 279 ("[I]t may take a few
months to recover from the right shoulder and then he will need
surgery done on the left shoulder.  His incapacitation will be

prolonged[.]"); R. 287 ("My impression is [sic] the patient has a sprain of his left shoulder which is reaggravated biceps tendinitis."); R. 380 ("I can put [Mr. Wright] through about 30 percent of his passive range of motion without any major pain"); R. 382 (prescribing "[n]o external rotation for at least another three or four weeks"); R. 291 ("He has had significant disability because of both shoulders being involved with severe arthritis and bicipital tendinitis").  The ALJ should have analyzed those underlying treating source medical opinions pursuant to the factors set forth in 20 C.F.R. § 404.1527(C)(2).5  Instead, the ALJ overlooked them completely.

Moreover, during the proposed closed period of disability, March 2008 to June 2009, plaintiff had three

---

5 20 C.F.R. § 404.1527(C)(2) outlines the factors that an ALJ must consider when determining whether to afford a treating source's opinion controlling weight.  The factors are as follows: (1) the "[l]ength of the treatment relationship and the frequency of examination[;]" (2) the "[n]ature and extent of the treatment relationship[;]" (3)  the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician (because the ALJ generally gives more weight to specialists); and (6) "any [other] factors . . . which tend to support or contradict the opinion."  20 C.F.R. § 404.1527(d)(2).  Here, the ALJ did acknowledge the fact that Dr. Ghosh was a board certified orthopedist. (R. 14).  However, while the ALJ mentions some of the treatment claimant received from Dr. Ghosh (R. 14-15), the ALJ does not note and credit the frequent medical encounters over more than a year period of time (December 2007-March 2009).

surgeries. (R. 210 (Hemiarthroplasy of the right shoulder with a HemiCAP prosthesis on April 18, 2008); R. 215 (HemiCAP arthroplasty of the left shoulder on July 18, 2008); R. 369 (Anthroscopy, decompression and acromiplasty of the left shoulder on February 16, 2009)). Even the ALJ stated that "[b]ecause of the seriousness of the damage to his shoulders, it is reasonable to assume significant sequelae to this day despite surgical intervention." (R. 16). Accordingly, the ALJ should have analyzed and explained the import of Dr. Ghosh's multiple medical encounters over this period of time in the context of multiple surgeries, both to determine disability generally and disability for a closed period.

### C. Additional reasons why the ALJ's opinion is not supported by substantial evidence

First, the Court is not satisfied that the ALJ adequately considered other medical opinions and other evidence of record. In addition to Dr. Ghosh, Mr. Wright saw Dr. Callahan, a board-certified anesthesiologist, for neck pain eight times from March 2008 to June 2009. (R. 223-228, 272-273). The ALJ states that these "scattered complaints of neck pain" have "no pertinent imaging studies" and no observations by Dr. Callahan beyond his diagnosis of cervical spondylosis and a facet syndrome. (R. 14). The ALJ does not explain the weight he gave to Dr.

Callahan's note that Mr. Wright had neck pain radiating down his right arm (R. 273), nor the weight given to Dr. Callahan's performance of a series of 10 bilateral cervical medial branch blocks on three different occasions in the hopes of achieving "some significant reduction in [Mr. Wright's] neck pain." (R. 224).  The ALJ does not address Dr. Callahan's note that plaintiff obtained only "some relief" from the injections (R. 226) and that Mr. Wright's pain scale still remained at 6 out of 10 by the next office visit, despite continued prescriptions of Percocet for breakthrough pain.  (R. 272).

The ALJ also failed to explain the weight given to Dr. Totoonchie and Dr. Najar's assessment that Mr. Wright's ADL's were impaired, and their determination that Mr. Wright's description of those impairments was credible. (R. 239; 305). Neither did the ALJ explain the weight given to the fact that both RFC assessments found that Mr. Wright was limited in his ability to, push,  pull (R. 235; R. 301), and reach in all directions. (R. 237; R. 303).  The ALJ reports that Dr. Najar, the "state agency board-certified internist[,] felt that the claimant was limited to sedentary exertion with some non-exertional restrictions" (R. 17) but declared his different view that he "saw no reason why the claimant could not be on his feet much longer." (Id.)  The ALJ did not explain how he came to his

different view.

Second, the ALJ failed to adequately assess the combined effect of plaintiff's impairments in determining whether he has a severe impairment or combination of impairments, as required under Step 2.  20 C.F.R. § 416.923.  The ALJ must "provide adequate explanation to show that he had considered the combined effect of the impairments so as to allow proper judicial review."  Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985).  Several Fourth Circuit cases explicate the ALJ's duty to explain.  For instance, in Cook, 783 F.2d 1168, the court remanded the case, stating that the ALJ's decision "fails to explain the reasons for the determination that [the claimant's] arthritis did not meet or equal a listed impairment.  Id. at 1172.  The ALJ should have "identified the relevant listed impairments" and "compared each of the listed criteria to the evidence of [the claimant's] symptoms."  Id. at 1173.  When an ALJ fails to explain a decision, the Court concluded, it is "simply impossible to tell whether there was substantial evidence to support the determination."  Id. at 1173.

At step two of the usual five-step analysis, the ALJ did

not discuss whether Mr. Wright's hypertension and neck pain[6] are
severe when considered *in combination* with Mr. Wright's shoulder
impairments.  See 20 C.F.R. Section 416.920 (emphasis added);
see also 20 C.F.R. Section 416.923 ("We will consider the
combined effect of all of your impairments without regard to
whether any such impairment, if considered separately, would be
of sufficient severity.

     Regarding Mr. Wright's hypertension, the ALJ only stated
that since "there is no appreciable effect upon functioning, I
find his hypertension to be nonsevere." (R. 14).  Regarding Mr.
Wright's neck pain, the ALJ describes facts but makes no
conclusions except to state that "there is no proof of any bony
or soft tissue abnormality affecting the neck after the
September 2008 injections." (R. at 14).  The ALJ evaluated Mr.
Wright's hypertension and neck pain without determining if the
combined effects of these impairments with Mr. Wright's shoulder
pain equaled a listing.

     Finally, while not specifically raised by the claimant, but
obviously related to the issue of substantial evidence is the
ALJ's consideration of Mr. Wright's credibility.  The ALJ wrote
that he

---

[6] The ALJ determined that Mr. Wright's claims of obesity,
anxiety, hip pain, and back pain did not meet the requisite
duration.  (R. 13).

> finds that the claimant's medically
> determinable impairments could reasonably be
> expected to cause the alleged symptoms;
> however, the claimant's statements
> concerning the intensity, persistence and
> limiting effects of these symptoms are not
> credible to the extent that they are
> inconsistent with the above residual
> functional capacity assessment.

(R. 16).  This finding is circular and insufficient, and does

not meet the previously-discussed duty to explain his decision.

## VI.  CONCLUSION

For the reasons set forth above, the Court DENIES plaintiff's

motion for summary judgment (ECF No. 12), DENIES defendant's

motion for summary judgment (ECF No. 16), GRANTS plaintiff's

motion for remand (ECF No. 12), and REMANDS for action

consistent with this opinion.

Despite the informal nature of this letter, it shall

constitute an Order of the Court, and the Clerk is directed to

docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge